JOURNAL ENTRY and OPINION
Robert H. Abernethy appeals from a judgment of the domestic relations division of the common pleas court granting Eve Abernethy's complaint for divorce, setting the duration of marriage from 1977 to January 2000 and dividing the marital property accordingly, ordering him to pay $1530/month in spousal support, and ordering him to contribute $10,000 toward Eve's attorney fees.
On appeal, Robert argues that the court erred in its findings regarding the duration of marriage for the purposes of dividing property, urging that it should have found the actual date of marriage, August 28, 1983, as the commencement date and the date of separation, May 15, 1994, as the de facto termination date; consequently, he claims the court erred in finding that assets he obtained after they had separated, but before trial, constituted marital property. He further argues that the court erred in its award of spousal support and attorney fees.
After review of the record, we have concluded that the trial court properly exercised its property division and its award of spousal support. However, the court abused its discretion in awarding attorney fees. As such, we affirm the judgment of the trial court, but reverse the award of attorney fees, and remand this matter for further proceedings on that issue.
Robert and Eve met in 1977 and, although married to other people at the time, they began a relationship. On September 23, 1977, Robert moved into Eve's home. Eve divorced her fourth husband, Clifford Peer, in March 1979. Robert divorced his first wife, Kathleen Abernethy, on February 10, 1982.
In December 1980, they purchased a home in Berea, Ohio, as Robert H. Abernethy and Eve R. Abernethy, Husband and Wife. They also maintained a joint bank account at Union Commerce Bank, and filed a joint tax return during their cohabitation.
Then, on August 28, 1983, Robert and Eve married; no children were born as issue to this marriage. After almost eleven years of marriage, on May 15, 1994, Robert and Eve separated.
On December 13, 1995, Eve filed a complaint for divorce in domestic relations court. After protracted pretrial litigation, trial of this matter commenced January 5, 2000, before a domestic court magistrate.
Approximately a year later, on January 23, 2001, the magistrate issued her decision; subsequently, both sides filed objections to the magistrate's decision. On October 4, 2001, the court overruled the objections and adopted the magistrate's decision in its entirety, granted the parties a divorce, set the duration of marriage from 1977 to January 2000, divided their property, awarded Eve spousal support in the amount of $1530/month, and ordered Robert to contribute $10,000 toward Eve's attorney fees.
Robert now appeals, raising four assignments of error for our review. The first and second state:
 THE TRIAL COURT IMPROPERLY DETERMINED THE COMMENCEMENT DATE AND TERMINATION DATE OF THE PARTIES' MARRIAGE. THE TRIAL COURT ERRED IN ITS DIVISION OF PROPERTY PURSUANT TO OHIO REVISED CODE SECTION 3105.171.
Robert argues the trial court erred in selecting 1977, when the parties started living together, as a de facto date for the commencement of marriage, and further erred in using the date of the final hearing, January of 2000, as termination date for the duration of marriage for the purposes of dividing property. He urges that the court should have selected the actual date of marriage, August 28, 1983, as the commencement date and should have selected their separation date, May 15, 1994, as a de facto termination date. He further argues that, because the court used erroneous dates, it abused its discretion in finding property acquired after their separation in 1994 to be marital property.
Eve counters that the trial court properly exercised its discretion in selecting 1977 as a de facto commencement date and in selecting January of 2000 as the termination date based on R.C. 3105.171(A)(2) and the facts of this case.
R.C. 3105.171(A)(2) sets forth the method for determining the duration of marriage for the purposes of dividing property. That statute provides:
 (2) "During the marriage" means whichever of the following is applicable:
 (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court. (Emphasis added.)
Under subsection (a), the date of the marriage is presumed to be the commencement date for the marriage and the date of the final hearing is presumed to be the termination date. However, subsection (b) gives the trial court discretion to select de facto dates when equitable. As we stated in Glick v. Glick (1999), 133 Ohio App.3d 821, 828, 729 N.E.2d 1244:
 In order to achieve an equitable distribution of property, the trial court must be allowed to use alternative valuation dates where reasonable under the particular facts and circumstances of the case. Langer v. Langer, 123 Ohio App.3d 348, 704 N.E.2d 275
(1997), appeal dismissed (1997), 80 Ohio St.3d 1473, 687 N.E.2d 470. "The determination as to when to apply a valuation date other than the actual date of divorce is within the discretion of the trial court and cannot be disturbed on appeal absent a demonstration of an abuse of discretion." Gullia v. Gullia (1994), 93 Ohio App.3d 653, 666, 639 N.E.2d 822, appeal dismissed (1994), 70 Ohio St.3d 1409, 637 N.E.2d 6, 637 N.E.2d 7.
Robert argues the trial court erred in selecting 1977 as a de facto date for the commencement of marriage, noting that both he and Eve were married to other people at the time, Robert to Kathleen Abernethy until February 10, 1982, and Eve to Clifford Peer until March 1979, and that the actual date of marriage is August 28, 1983.
The court stressed the following facts in finding that using the actual marriage date would be inequitable: Robert and Eve started living together in 1977; they purchased a home on Runn Street in Berea in December of 1980 as Robert H. Abernethy and Eve R. Abernethy, Husband and Wife; they maintained a joint bank account at Union Commerce Bank in 1980; and they filed a joint federal tax return for 1979 as husband and wife.
Based on these circumstances, the trial court determined that using 1977 as the commencement date of the marriage for purposes of division of property would be more equitable than using the actual date of marriage, concluding:
 The Magistrate concludes it would be inequitable to use the date of the parties' marriage ceremony as the commencement date of the marriage because the parties lived together prior to the marriage ceremony for approximately 6 years. During that time they established and maintained an economic partnership similar to marriage. * * * [T]his court has concluded that for the purposes of determining the term of the marriage, it is equitable to use the date that the parties started functioning as Husband and Wife, both socially and economically.
Based on the evidence presented at trial, however, we have concluded that the trial court abused its discretion in this regard. Simply put, it is not equitable to commence this marital relationship while the parties were married to other people. We have therefore determined that the court should have selected August 28, 1983, as the commencement date of the marriage, and we modify the judgment accordingly; nevertheless, this determination has no impact on the division of property.
Robert also claims that the trial court erred using the date of the final hearing, January of 2000, as termination date for the duration of marriage for the purposes of dividing property. He urges that the court should have instead selected their separation date, May 15, 1994. He further argues that the selection of the termination date is crucial in this case, because he acquired several assets after May 15, 1994, namely a $17,600 Dean Witter IRA account and $3,500 from the sale of his interest in Z-Men Corporation, and if we determine the separation date to be the de facto termination date, those assets would become his separate property pursuant to R.C. 3105.171(A)(6)(iv); instead, by selecting January of 2000 as the termination date, the trial court found those assets obtained after the separation date to be marital property.
In divorce cases, we presume the date of the final hearing is the appropriate termination date of the marriage unless the court, in its discretion, uses a de facto termination. Badovick v. Badovick (1998),128 Ohio App.3d 18, 713 N.E.2d 1066, citing R.C. 3105.171(A)(2); Berish v. Berish (1982), 69 Ohio St.2d 318, 321, 432 N.E.2d 183.
However, Robert relies on Gullia v. Gullia (1994), 93 Ohio App.3d 653,666, 639 N.E.2d 822, appeal dismissed (1994), 70 Ohio St.3d 1409,637 N.E.2d 6, 637 N.E.2d 7, to support his position that the court abused its discretion in not finding their separation date, May 15, 1994, as a de facto termination date. In Gullia, we stated:
 * * * A review of the evidence shows that after the parties' separation, they had separate residences, separate business activities and utilized separate bank accounts. In addition, no attempt at reconciliation was made by either party.
However, in Glick, supra, a subsequent decision from our court, the husband argued, based on Gullia, that the court should have used the separation date as the de facto termination date. We rejected this argument, based on the facts presented in that case, stating:
 * * * The evidence revealed that Dixie Glick lacked any employable skills, while Gregory Glick possessed substantial earning potential. Also, Dixie Glick had been out of the workforce for seventeen years while she committed herself to being a housewife and mother.
Here, the trial court found the date of the final hearing to be more equitable than the separation date based on the following: Eve remained financially dependent on Robert from the time of their separation to the time of trial; except for brief periods of part-time employment she had remained out of the work force from 1979 to 1994 due to her marital responsibilities; she remained unemployed between separation and trial; and, at age 54, she could not become self-supporting.
Based on these circumstances, the court did not abuse its discretion in selecting the date of trial as the termination date of the marriage, and thus finding that the assets obtained by Robert after the separation date but prior to trial constituted marital property.
Accordingly, although we have determined that the trial court abused its discretion in selecting the commencement date of marriage, and have modified the judgment to select August 28, 1983 as the commencement date, this modification does not change the division of property. Thus, these assignments of error are overruled.
The third assignment of error states:
 THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING SPOUSAL SUPPORT TO THE APPELLEE, EVE ABERNETHY.
Robert argues that the trial court erred in awarding spousal support without considering all of the factors listed in R.C. 3105.18(C)(1). Pursuant to that statute, a court is required to consider all the following factors in determining whether spousal support is reasonable and appropriate:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
The trial court enjoys broad discretion in awarding spousal support, and we will not reverse such a decision absent an unreasonable, arbitrary, or unconscionable attitude exhibited by the court. See, e.g., Macko v. Macko (Feb. 26, 1998), Cuyahoga App. No. 72339, citing Babka v. Babka (1992), 83 Ohio App.3d 428, 432, 615 N.E.2d 247, citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218, 450 N.E.2d 1140, 1141; Cherry v. Cherry (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293, paragraph two of the syllabus.
Robert contends that the trial court failed to consider factors (a), (c), (d), (e), (g), (i), (k), (m), and (n). However, a review of the judgment entry reveals that the court specifically reviewed each of the R.C. 3105.18(C)(1) appropriate and reasonable factors. In this regard, the magistrate's report, which the court adopted in its entirety, states:
 [Factors (a) and (b).] Neither party will have current income from property divided, disbursed or distributed under Ohio Revised Code 3105.171.
 Plaintiff had no employment as of the date of trial. In 1999 she attempted to generate income by making and selling crafts at the IX Center. Plaintiff testified that she participated in a show for three days in November of 1999.
 During the marriage, in 1991-92, Plaintiff worked part-time as a toll collector on the Ohio Turnpike. From the date of the parties' separation in May of 1994 to sometime in 1996 Plaintiff was a volunteer employee at the Newburg House of Hope, a residential recovery center for alcohol and drug addicted women. Plaintiff testified that she was not paid a salary or hourly wage, but she lived at the House for free and was provided with food and gasoline for her car. The House closed in 1996 due to lack of funding.
 Defendant is self-employed as a dispatcher at a closely-held corporation, A H Trucking in which he owns a 40% interest.
He earns approximately $70,000.00 per year.
 In 1997 Defendant reported income in the amount of $73,282 from the business ($32,270 in wages and $41,012 from Schedule K-L) (Plaintiff's Exhibit 1.) In 1998 Defendant reported income in the amount of $72,808.00 ($40,934 in wages and $31,874 from Schedule K-L) (Plaintiff's Exhibit 2 and 22). The amount of total income reported by Defendant on his tax returns is less than that indicted [sic] in this paragraph because the amount reported on the tax returns has been reduced by section 179 depreciation.
 In addition to wages and distributions, the corporation provides health insurance for Defendant as a benefit of his employment at no cost to him. The business also pays for the vehicle which Defendant drives, a 1998 Plymouth Voyager, at a cost of $320.00 per month. The vehicle is titled to Defendant's girlfriend, Diane Smierciak.
* * *
 Based on the evidence presented, the Magistrate concludes that Defendant's earning ability is measurably greater than that of Plaintiff. Assuming arguendo that Plaintiff is able to work, she has no training or job experience which would allow her to earn more than minimum wage. For every dollar Defendant earns, at most Plaintiff could earn 14 cents.
 Plaintiff's earning ability is so minimal that she would be living in poverty without spousal support from Defendant.
 [Factor (c).] Plaintiff (D.O.B. 3-3-40) was age 59 as of the date of trial. Plaintiff testified that she suffers from numerous health problems, namely bilateral retrobulbar neuritis (which causes her to have trouble with her vision), arthritis in her spine, chronic bronchitis and multiple sclerosis.
 However, Plaintiff did not present any expert medical evidence to confirm that she has the diagnoses to which she testified. The Magistrate finds that Plaintiff's testimony that she has multiple sclerosis lacked credibility.
 Defendant (D.O.B. 11-16-37) was age 62 as of the date of trial. His [sic] has type-two diabetes which is managed by a daily dose of prescription medication. Injections are not necessary to control the disease. No evidence was presented that Defendant suffers from any mental or emotional problems. Both parties testified that they are recovering alcoholics. Plaintiff's sobriety date is October 8, 1981. Defendant's sobriety date is March 13, 1982.
 [Factor (d).] Other than the Dean Witter IRA of approximately $17,600 neither party has any retirement benefits except those earned under the Social Security system. [Factor (e).] The duration of the marriage was 23 years, 1977 to 2000.
 [Factor (g).] The parties maintained a lower-middle class standard of living during the marriage. They lived in Berea in a moderately priced home but the residence was lost to foreclosure during the 1980s. The parties did not own a home thereafter. During the term of the marriage the parties took only one vacation.
* * *
 [Factor (i).] The relative assets and liabilities of the parties, including court-ordered payments, will be as recommended hereinafter.
* * *
 [Factor (k).] Plaintiff is not seeking education, training or job experience to become qualified for other employment.
* * *
 [Factor (m).] The lost income production capacity of Plaintiff that resulted from her marital responsibilities is immense.
 Plaintiff remained out of the work force for 15 years (from 1979 to 1994) as a result of her marital responsibilities. During those years Plaintiff was age 39 to 54. She will most likely never be able to rehabilitate herself from the lost earning capacity occasioned by the marriage.
 [Factor n.] In determining whether spousal support is reasonable and in determining the amount and terms of the payment of spousal support, pursuant to Ohio Revised Code § 3105.18(C)(2), the Magistrate finds each party has contributed equally to the production of marital income.
Based on our review of the record, we have concluded that the trial court expressly considered each of the R.C. 3105.18(C)(1) factors. The evidence supports each of its findings, except for factor (e), the duration of the marriage. The court found the duration of the marriage to be 23 years, from 1977 to 2000.
However, as stated above, the trial court abused its discretion in finding that the marriage commenced in 1977; instead, we have determined that the proper commencement date is August 28, 1983. This changes the duration of marriage from 23 years to 17 years; nevertheless, factor (e) is only one factor in the trial court's determination, and does not necessarily make the court's award of spousal support unreasonable or inappropriate.
Based on the totality of the circumstances, and all the factors set forth in R.C. 3105.18(C)(1), we have determined that the court's award of spousal support to Eve in the amount of $1,530/month is reasonable and appropriate based on the evidence presented and the court's findings, and therefore, that the court properly exercised its discretion in this regard. Accordingly, we reject this assignment of error.
Robert's fourth assignment of error states:
 THE TRIAL COURT IMPROPERLY AWARDED ATTORNEY FEES TO THE APPELLEE, EVE ABERNETHY.
Robert claims that the trial court abused its discretion in ordering him to pay $10,000 of Eve's attorney fees, arguing that the court failed to make the required findings under R.C. 3105.18(H), Dom.R.Loc.R. 21(B), and DR 2-106(B), and noting that Eve's attorney raised his fees from $100/hour to $175/hour without explanation.
We begin our analysis with R.C. 3105.18(H), which states:
 (H) In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees. (Emphasis added.) As we stated in Meister v. Meister (Oct. 12, 2000), Cuyahoga
App. No. 77110:
 The payment of attorney's fees primarily is the function of the party who retains the attorney. Farley v. Farley (1994), 97 Ohio App.3d 351, 646 N.E.2d 875. An award of attorney's fees by the trial court under R.C. 3105.18(H) will not be reversed absent an abuse of discretion. Rand v. Rand (1985), 18 Ohio St.3d 356, 359, 481 N.E.2d 609. When awarding attorney's fees, the trial court must consider the same factors considered when making an award of spousal support. Williams v. Williams (1996), 116 Ohio App.3d 320, 328, 688 N.E.2d 30. Two important considerations are the financial ability of the payor spouse and whether a failure to award reasonable attorney's fees will prevent either party from fully litigating his rights and adequately protecting his interest. Id. This court's review of an award of attorney's fees is limited to determining whether (1) the factual considerations upon which the award was based are supported by the manifest weight of the evidence, or (2) the trial court abused its discretion. Gourash v. Gourash (Sep. 2, 1999), Cuyahoga App. Nos. 71882 and 73971, unreported.
Here, the court specifically found that Robert had the financial ability to contribute to Eve's attorney fees; however, neither the magistrate's decision nor the trial court's order adopting it expressly found whether a failure to award reasonable attorney's fees would prevent either party from fully litigating his or her rights and adequately protecting their respective interest.
In Oatey v. Oatey (1992), 83 Ohio App.3d 251, 614 N.E.2d 1054, we reversed an award of attorney fees, concluding that the court abused its discretion by failing to expressly consider whether plaintiff would be prevented from fully litigating her rights without an award of reasonable interim attorney fees.
In conformity with Oatey, we have determined that the trial court here abused its discretion in this regard, and we are constrained to reverse the award of attorney fees.
Based on the forgoing, we have determined that the trial court abused its discretion in its award of attorney fees without satisfying R.C.3105.18(H). Accordingly, this assignment of error is well taken, we reverse the award of attorney fees, and we remand this matter for further proceedings consistent with this opinion.
Judgment affirmed as modified. Award of attorney fees reversed and that limited matter remanded for further consideration. Matter affirmed in other respects.
It is ordered that appellant and appellee share equally their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Domestic Relations Division of the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, P.J., and ANN DYKE, J., CONCUR.